[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the January 27, 2003 judgment of the Ottawa County Court of Common Pleas which affirmed the decision of the Ottawa County Regional Planning Commission ("OCRPC") approving the replat of a portion of Nor-Easter Club Subdivision and a portion of roadway therein. Harbor Island Association, Inc. and Richard A. Seckler originally appealed the OCRPC's decision approving the replat; however, Harbor Island Association, Inc. withdrew as appellant, leaving Seckler as the sole appellant in this case. For the reasons that follow, we affirm the decision of the common pleas court.
 {¶ 2} Appellant owns a lot in Harbor Island Subdivision in Catawba Island Township, Ottawa County, Ohio. Harbor Island Development sought approval from OCRPC to reposition a roadway within its subdivision in order to add four lots. The OCRPC approved the replat and appellant appealed the matter to the common pleas court, pursuant to R.C. Chapter 2506, et seq. Appellant asserted that the roadway, which was established in the original plat of the Harbor Island Subdivision in 1959, created an express easement for the property owners in the subdivision. Appellant argued that the creation of an express easement over the roadway preempted the statutory authority of the OCRPC, pursuant to R.C. 711.24, to approve a replat and relocation of the roadway, and that his consent was required before a replat could be approved. Appellant additionally argued that R.C. 711.24 was unconstitutional on several bases. In reviewing the OCRPC's decision, the common pleas court held that appellant had only a license or implied easement to use the roadway and, therefore, the plat and roadway location could be changed pursuant to R.C. 711.24. As such, the common pleas court affirmed the decision of the OCRPC and held that it was not unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by a preponderance of substantial, reliable, probative evidence.
 {¶ 3} Appellant appeals the decision of the common pleas court to this court and raises the following sole assignment of error:
 {¶ 4} "The Common Pleas Court erred in affirming the decision of the Ottawa County Regional Planning Commission to approve the replat of a portion of Harbor Island Subdivision without the consent of appellant, Richard Seckler, who, as a lot owner in the subdivision, has an express easement in the originally platted roadway which will have to be relocated under the replat."
 {¶ 5} R.C. 2506.04 sets forth the standard of review applicable to administrative appeals and states as follows:
 {¶ 6} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
 {¶ 7} The standard of review to be applied by a court of appeals, pursuant to R.C. 2506.04, however, is more limited in scope than the review by a court of common pleas. Henley v. Youngstown Bd. of ZoningAppeals (2000), 90 Ohio St.3d 142, 147. In Henley, the Ohio Supreme Court stated, in pertinent part:
 {¶ 8} "Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smith v. GranvilleTwp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 612, citing Dudukovichv. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207.
 {¶ 9} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope.' (Emphasis added.) Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. `This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court.' Id. at fn. 4. `It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. *** The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' Lorain City School Dist. Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St.3d 257, 261."
 {¶ 10} Harbor Island Development sought to replat the subdivision pursuant to R.C. 711.24, which states:
 {¶ 11} "Any person owning, either jointly or severally, and either in his own right or in trust, and having the legal title to any land laid out in town lots, not within the limits or subject to the control of a municipal corporation, may change such lots and the streets and alleys bounding them by making, acknowledging, and having recorded, as provided in sections 711.01 to 711.38, inclusive, of the Revised Code, a new plat of such land, and having the proper transfers made in the office of the county auditor. No such change shall be made if it injuriously affects any lots on the streets or alleys, or within the plat so changed, unless all the owners of the lots so affected are parties joining in making the change, or such owners give their consent in writing on the new plat, which is recorded therewith. Any change of a town plat made under this section shall have the same effect as if made by the judgment of a court having jurisdiction thereof."
 {¶ 12} In Clagg v. Baycliffs Corp. (1998), 82 Ohio St.3d 277,279, under facts similar to this case, the Ohio Supreme Court held that, insofar as R.C. 711.24 was in existence at the time the implied easement in Clagg was created, "the court may infer that the creator of the original plat was or should have been aware of the statutes concerning plats and changes to plats and that the implied easement is therefore limited by the platting provisions" in R.C. 711.24. The court further stated:
 {¶ 13} "If the grantor of the implied easement had intended to protect the easement holders from the effect of the replat statute, the grantor could have done so by granting an express written easement defining the extent of the rights, by providing for joint ownership of the property over which [the roadway] runs, or by any other legal means of conveyance. The grantor did not do so. Therefore, the implied easements in [the roadway], having no express terms, definitions, or duration, are limited by the application of the law in effect at the time they were created, including the provisions of R.C. 711.24." Clagg at 279-280.
 {¶ 14} In this case, the Owner's Statement, with respect to the original plat design, states that "The owners of lots in this plat, their successors, heirs and assigns and bona fide guests and tenants of any lot owner, are hereby granted the right and privilege to use the boat channels and ways hereon shown as appurtenant to each lot and parcel in this plat, subject, however, to the restrictions above mentioned." The Declaration of Restrictions, recorded, stated that owners of lots, which includes appellant, were granted the following rights:
 {¶ 15} "G. Owners of lots in said subdivision, their bona fide tenants and guests shall have and are hereby granted the following rights, privileges and uses in common with grantor, but under the subject to the foregoing restrictions and reservations:
 {¶ 16} "1. Use of the extension westerly and northerly of North Shore Blvd. for roadway purposes to provide access to public highways thereover;
 {¶ 17} "2. Use of the boat channels, waterway and ways in and adjacent to said plat for access by water and land to lots in said plat; ***"
 {¶ 18} Appellant argues that the above quoted language grants him an express easement to use the North Shore Blvd., in the location it was originally located and, if Harbor Island Development desired to move the roadway, his consent was required. We disagree.
 {¶ 19} The existence of an express easement involves the construction of an instrument of conveyance and is, therefore, a matter of law if the terms of the instrument are clear and unambiguous. SeeAlexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. This court has previously described the nature of an easement in Hammond v. Klonowski (June 29, 2001), Erie App. No. E-00-044, wherein we stated:
 {¶ 20} "`An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former.' Yeager v. Tuning
(1908), 79 Ohio St. 121, 124. The express easement must be set forth in the language of the deed, lease, etc. Kamenar Railroad Salvage, Inc. v.Ohio Edison Co. (1992), 79 Ohio App.3d 685, 689. No particular words are required, but the language used must evidence an intent to create an easement. Nedolast v. Frankart, 1999 Ohio App. LEXIS 4891 (Oct. 20, 1999), Seneca App. No. 13-99-19, unreported. Once created, the easement must appear in the chain of title of the dominant parcel. Pence v. Darst
(1989), 62 Ohio App.3d 32, 37."
 {¶ 21} We find that the language in the Owner's Statement and Declaration of Restrictions does not clearly and unambiguously create an express easement for appellant's benefit. The documents generally grant appellant the right to use North Shore Blvd., from its westerly to northerly extension, for the purpose of having access to public highways. However, there is no indication that appellant's right attached to the specific location where the roadway was placed in the original plat. Accordingly, we find that appellant was never granted any express easement over North Shore Blvd. in the exact location where it was positioned in the original plat.
 {¶ 22} Moreover, we note that R.C. 711.24 was in existence at the time of the original platting of the subdivision. As was held in Clagg, had Harbor Island Development's predecessor intended to protect the lot owners from the effect of the replat statute, it could have done so by granting an express written easement defining the extent of the rights, by providing for joint ownership of the property over which the roadway runs, or by any other legal means of conveyance. Such an express easement was simply never set forth in the original documents in this case.
 {¶ 23} Accordingly, in the absence of an express easement to the contrary, and in light of R.C. 711.24, and the Ohio Supreme Court's decision in Clagg, we find that the trial court correctly determined that the OCRPC was within its authority to grant Harbor Island Development's request to replat portions of the subdivision and reposition North Shore Blvd., without appellant's consent, insofar as the change was found not to injuriously affect any lots on the street.
 {¶ 24} Based on the foregoing, we find appellant's sole assignment of error not well-taken. We therefore affirm the decision of the Ottawa County Court of Common Pleas affirming the decision of the Ottawa County Regional Planning Commission. Appellant is ordered to pay the costs of this appeal.