OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendants-Appellants, Andbloom, LLC, and Fred Andrews, appeal the decision of the Mahoning County Court of Common Pleas that awarded Plaintiff-Appellee, the B.J. Alan Company, with an injunction preventing Appellants from violating the terms of Andrews's agreement not to compete with B.J. Alan after his resignation for one year within a defined geographic area. Appellants challenge this conclusion for many reasons, arguing that the non-compete agreement is unenforceable since it was not a contract, that it was not actually breached, that the geographic restrictions in the agreement are unreasonable, and that B.J. Alan was not irreparably harmed by the Appellants' conduct.
 {¶ 2} The trial court found that Appellants violated the non-compete agreement by operating businesses in both Pennsylvania and Hawaii. While the evidence supports its conclusion with regard to the location in Pennsylvania, it does not support the trial court's conclusion with regard to the location in Hawaii. The trial court's order is modified to reflect the fact that Appellants' operations in Hawaii do not violate the terms of the non-compete agreement. In all other respects, the trial court's decision is affirmed.
 Facts {¶ 3} B.J. Alan is a large company involved in the sale of fireworks. It has operations in every state which allows the sale of fireworks and operates both permanent retail locations and temporary retail locations. Andrews was hired by B.J. Alan in 1994 to work for B.J. Alan's candy operations in an executive capacity. Andrews had extensive experience in the candy industry before he was hired by B.J. Alan. After it hired Andrews, B.J. Alan discontinued its candy operation, so Andrews began to work for B.J. Alan's fireworks operations in an executive capacity. Andrews had no prior experience in the fireworks business. Andrews' responsibilities eventually included supervising B.J. Alan's chain store relationships and telemarketing operations.
 {¶ 4} As an executive-level employee, Andrews had access to confidential information, including customer lists, supplier lists, lists of the top-selling fireworks, marketing strategies, and operational plans. Because of Andrews' access to this *Page 2 
information, he was asked to sign an agreement not to compete with B.J. Alan. Andrews negotiated the terms of this agreement with the assistance of counsel. Under that agreement, Andrews could not open a fireworks store within seventy-five miles of either a B.J. Alan permanent retail location or a location where B.J. Alan "has had discussions or conducted investigations about establishing a permanent retail store" or within fifteen miles of a B.J. Alan temporary venue for selling fireworks for one year after he left his employment with B.J. Alan. This agreement did not apply if Andrews resigned for "good reason," which was defined as "a material adverse change in Employee's duties or responsibilities, wages or other compensation, hours, working conditions or locations or fringe benefits." Andrews signed this non-compete clause in November 2004.
 {¶ 5} In April 2005, Andrews resigned his employment with B.J. Alan. Soon thereafter, he entered into a lease in Glen Rock, Pennsylvania, in order to open and operate a retail fireworks store. He also opened a retail fireworks store in Hawaii. B.J. Alan felt that the Pennsylvania location was in breach of his non-compete agreement because it was within seventy-five miles of a location where B.J. Alan was planning on building a permanent retail store. It also felt that the Hawaii location breached the agreement since it was within fifteen miles of a K-Mart which sold B.J. Alan fireworks merchandise.
 {¶ 6} B.J. Alan filed its complaint against Andrews, Andbloom, a company which Andrews established to operate his fireworks business, and other parties, seeking to prevent them from operating the fireworks retail stores in Pennsylvania and Hawaii. Service was never completed on the other defendants and they were dismissed from the case. On January 6, 2006, B.J. Alan moved for a temporary restraining order and preliminary injunction. The trial court denied the motion for the temporary restraining order and a magistrate held a hearing on the motion for a preliminary injunction. At the conclusion of the hearing, the magistrate granted the injunction, thereby enjoining Appellants from violating the agreement for six months.
 {¶ 7} Both parties objected to the magistrate's decision. After an oral hearing, the trial court adopted the magistrate's decision, but extended the injunction to last one year, *Page 3 
rather than six months. Appellants' sole assignment of error on appeal argues:
 {¶ 8} "The trial court abused its discretion when it issued a preliminary injunction."
 Standard of Review {¶ 9} In this case, the trial court granted the injunction requested by B. J. Alan. An injunction is an equitable remedy that will be granted only where the act sought to be enjoined will cause immediate and irreparable injury to the complaining party and there is no adequate remedy at law. Lemley v. Stevenson (1995), 104 Ohio App.3d 126, 136. This court reviews a decision granting an injunction for an abuse its discretion. Perkins v. Quaker City (1956), 165 Ohio St. 120, 125. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138.
 Enforceability of Non-Compete Clause {¶ 10} Appellants contend that the non-compete clause is a part of B.J. Alan's company policy and not an enforceable contractual term. Accordingly, they contend that the trial court erred by enforcing this clause when it issued its injunction. Appellants base this argument on two separate grounds. First, they contend that the terms of the non-compete document show that it was a policy and that the employee handbook specifically disclaimed that it was a contract. Second, they contend there was no consideration for Andrews' agreement to be bound by the non-compete clause.
 {¶ 11} B.J. Alan argues that continued at-will employment was sufficient consideration to support the enforcement of the non-compete clause against Appellants. B.J. Alan also maintains that its agreement with Andrews was a contract, not a policy. Finally, it claims that the non-compete clause is enforceable since the disclaimer in the handbook is there to prevent an employee from making a contract claim against B.J. Alan and not to prevent B.J. Alan from enforcing the policy.
 {¶ 12} Appellants' first argument is meritless. Andrews was an at-will employee. *Page 4 
At-will employment is a relationship where an employee agrees to perform work under the direction and control of the employer and the employer agrees to pay the employee at an agreed rate. Lake Land Emp. Group ofAkron, LLC v. Columber, 101 Ohio St.3d 242, 2004-Ohio-0786, at ¶ 17. The parties to the relationship can always agree to change the terms of the relationship since the relationship could be ended by either party without just cause. Id. at ¶ 18. However, before a change in the relationship is enforceable, the parties must mutually assent to such a change. Without such mutual assent to be bound by a change, the change is simply a unilateral statement of rules and policies that creates no obligation or rights. Finsterwald-Maiden v. AAA S. Cent. Ohio (1996),115 Ohio App.3d 442, 446.
 {¶ 13} In this case, B.J. Alan and Andrews mutually assented to the change in the terms of their relationship. When B.J. Alan first approached Andrews about signing a non-compete agreement, he resisted. He and his attorney then negotiated with B.J. Alan to reach a mutual agreement on a mutually acceptable non-compete clause. This is not a case involving a unilateral statement by an employer, such as the publication of a handbook, which does not bind an employee. Instead, this is a case where the employee has agreed to continue his employment under the terms of a mutually agreed non-compete clause.
 {¶ 14} The fact that similar non-compete clauses are attached to B.J. Alan's employee handbook, which contains a disclaimer of any attempt to establish a contract, is immaterial. This non-compete clause was not attached to the employee handbook. Furthermore, the parties mutually agreed to its terms. Accordingly, it is binding and enforceable against Andrews.
 {¶ 15} The Ohio Supreme Court has recently dealt with the issue raised in Appellants' second argument, which contends that the clause is unenforceable since Andrews was not given any consideration for entering into the contract. In Lake Land Emp. Group, the employee was hired by his employer in 1988 as an at-will employee. In 1991, the employee signed a non-compete agreement, but was not given an increase of salary, benefits, or other remunerations as consideration for entering into the agreement. *Page 5 
The trial court refused to enforce the agreement, concluding that there had been no consideration given to the employee in exchange for his agreement not to compete with his employer.
 {¶ 16} The Ohio Supreme Court disagreed. It concluded that the presentation of a noncompetition agreement by an employer to an at-will employee is, in effect, a proposal to renegotiate the terms of the parties' at-will employment. Id. at ¶ 19. If the employee does not agree to the terms proposed by the employer, then he may leave his employment or his employer could terminate his employment without consequence. Id. at ¶ 18. Accordingly, the promise of continued employment is sufficient consideration to support the enforcement of a non-compete agreement entered into by two parties to an at-will employment relationship. Id. at syllabus.
 {¶ 17} In this case, Andrews was an at-will employee of B.J. Alan. There is no evidence that the parties ever entered into a contract either before or after they signed the non-compete clause. After the parties signed the non-compete clause, Andrews continued his employment with B.J. Alan. Accordingly, there was sufficient consideration supporting the agreement to make it enforceable.
 {¶ 18} For these reasons, the non-compete agreement is enforceable against Appellants. Their arguments to the contrary appear to be meritless.
 Good Reason for Leaving Employment {¶ 19} Appellants next argue that Andrews is not bound by the terms of the non-compete clause since he left his employment with B.J. Alan for good reason. The policy which contains the non-compete clause states that clause will not apply if Andrews voluntarily resigns for "good reason," which is defined as "a material adverse change in Employee's duties or responsibilities, wages or other compensation, hours, working conditions or locations or fringe benefits." Appellants contend that Andrews had good reason to terminate his employment with B.J. Alan since he was denied a bonus because of his insistence to negotiate the terms of his no-compete clause. Because he did not receive his regular bonus, he earned $72,867.93 in 2004, less than the $78,200.00 he made in 2003. According to Appellants, this decrease was a "material adverse change" *Page 6 
in his wages, justifying his resignation.
 {¶ 20} The facts of this case support the trial court's conclusion that Andrews did not have "good reason" to leave his employment with B.J. Alan, as that phrase is defined by the non-compete agreement. Andrews claims that he made less in 2004 than he did in 2003 and that this was a material adverse change in his wages, which justifies his resignation. However, Andrews's base salary in 2003 and 2004 was the same, $67,000.00. The difference in his total income is due to discretionary bonuses the company annually awards to its executive level employees.
 {¶ 21} Each year in the five years prior to his resignation, B.J. Alan gave Andrews a bonus of between four and ten thousand dollars. It does not appear that the amount of the bonuses increased every year. Instead, the amount varied depending on what occurred in the business that year. In 2004, B.J. Alan did not give Andrews a bonus. Instead, it increased his base salary by $6,000.00. An email from B.J. Alan's president, Bruce Zoldan, to Andrews indicated that the salary increase was given in lieu of a bonus, although the company had considered giving Andrews both a salary increase and a bonus. That email indicated that the company had considered giving Andrews both a raise and a bonus, but did not give him both of these because of his insistence on negotiating the terms of the non-compete clause.
 {¶ 22} It is difficult to see how an increase in Andrews's base salary can be called a materially adverse change in his wages since a raise to his salary ensures the increase for the future, as opposed to a bonus, which is not guaranteed and can be of varying amounts from year to year. Furthermore, since B.J. Alan does not award its executives a specific bonus every year, it is difficult to see how Andrews' wages were materially affected adversely since the amount of his raise fell within the range of bonuses he had been receiving for the past five years. Accordingly, the trial court's conclusion that there was not a material adverse change in Andrews' wages is supported by the evidence and Appellants' arguments to the contrary are meritless.
 Violation of the Agreement {¶ 23} In their third argument in support of their assignment of error, Appellants *Page 7 
argue that they did not actually violate the terms of the non-compete agreement. The agreement prevented Andrews from operating a fireworks retail location within seventy-five miles "of any permanent retail store where the Company engages in the sale of fireworks or where the Company has had discussions or conducted investigations about establishing a permanent retail store." There is no dispute that neither of the sites which are the subject of this lawsuit are within seventy-five miles of a permanent B.J. Alan fireworks retail store. Appellants also contend that neither of those sites are within seventy-five miles of a site where B.J. Alan had discussed or conducted investigations into opening a permanent retail store.
 {¶ 24} The agreement also prohibits Andrews from engaging "in the sale of fireworks within fifteen (15) miles for any location where the Company has operated a temporary venue selling fireworks within the one (1) year period prior to and including the date of termination of his employment." Appellants contend that they did not violate this provision since neither the site in Pennsylvania nor the site in Hawaii were within fifteen miles of one of B.J. Alan's temporary fireworks selling venues.
 {¶ 25} The issues relating to each of these clauses are distinct and will be addressed separately.
 Permanent Retail Store {¶ 26} As stated above, there is no dispute regarding whether Appellants' store is within seventy-five miles of an existing, permanent B.J. Alan retail store. Rather, B.J. Alan claims that Appellants' store is within seventy-five miles of a location where it had been considering opening a permanent retail store. Appellants contend that B.J. Alan has not "had discussions or conducted investigations about establishing a permanent retail store" that Andrews was aware of before terminating his relationship with B.J. Alan and that any store which might be established near his wouldn't have been opened until after the time limit to his non-compete agreement would have expired. Appellants' arguments are meritless.
 {¶ 27} The dispute about a violation of the non-compete clause relating to permanent retail stores centers on a store which Appellants opened in Glen Rock, *Page 8 
Pennsylvania. Appellants claim that Andrews was not aware that B.J. Alan was thinking about opening a permanent retail store near this location. However, the evidence in the record indicates otherwise. B.J. Alan's vice-president and general counsel, William Weimer, testified that Appellant's Glen Rock site was within seventy-five miles of two different sites where it was considering opening a permanent retail store. The first of these sites, Elkton, Maryland, is located about forty miles from Appellants' store. B.J. Alan was considering obtaining property from an existing fireworks business there and Andrews participated in scouting that location. B.J. Alan was also investigating opening a store about five miles from the location of Appellants' store. Andrews was not involved in planning that store, but Weimer testified that Andrews was curious and surely knew that B.J. Alan was considering building a store there in the near future.
 {¶ 28} This testimony was supported by that of B.J. Alan's director of development, Jack Abell, who testified that Andrews occasionally attended meetings discussing the development of the company and that the location five miles from Glen Rock was discussed "on a regular basis."
 {¶ 29} All of this evidence supports the trial court's conclusion that Andrews knew that B.J. Alan had an interest in establishing a business within seventy-five miles of Glen Rock, Pennsylvania. Appellants' argument to the contrary is meritless.
 {¶ 30} Appellants also contend that they did not violate the terms of the non-compete clause since B.J. Alan did not and could not establish a permanent retail store in that area during the one year time limit in the non-compete agreement. However, this argument addresses whether B.J. Alan was harmed by Appellants' actions, not whether Appellants actually breached the terms of the contract. Accordingly, Appellants' arguments that they did not breach the portion of the non-compete agreement prohibiting Andrews from competing with a permanent retail store are meritless.
 Temporary Retail Stores {¶ 31} B.J. Alan contends that a store which Appellants established in Hawaii is within fifteen miles of a K-Mart which sells B.J. Alan products. B.J. Alan contends that the K-Mart store qualifies as a temporary retail location under the non-compete agreement *Page 9 
and, therefore, that Andrews has breached the terms of that agreement. Appellants contend that a K-Mart store is a chain store, not a temporary retail store, and that the agreement does not prevent him from selling fireworks within fifteen miles of a chain store which carries B.J. Alan products. Appellants' argument in this regard has merit.
 {¶ 32} B.J. Alan has a national agreement with K-Mart to supply fireworks to their stores. However, Hawaii was not included in that national agreement. Eventually, B.J. Alan negotiated with the K-Marts in Hawaii to supply them with fireworks. The K-Marts in Hawaii sold in excess of $1,500,000.00 of fireworks merchandise per year, a high volume compared to the amount sold in K-Marts in the continental United States. According to B. J. Alan's vice-president of sales, Jerry Bostocky, B.J. Alan had to practically build a B.J. Alan store inside the K-Marts. Id. B.J. Alan people helped place products on shelves, "working the floors, merchandising the stock, maintaining the overall volume of product that is going through the store, doing refill orders, etc." B.J. Alan had to "pay for all licensing and deliveries." Bostocky testified that B.J. Alan's relationship to the stores in Hawaii was different than to the K-Marts on the mainland because B.J. Alan "really had to take over control of the market." "[Essentially, all K-Mart does [in Hawaii] is they scan the product and they get a percentage of what they scan." B.J. Alan is much more "hands-on" in the K-Mart stores in Hawaii than they are in the continental United States and had more control over how fireworks were sold in the stores.
 {¶ 33} However, there are important facts which show that B.J. Alan's operations in the Hawaii K-Marts are not "temporary venue[s] selling fireworks" as that phrase is used in the non-compete agreement. First, K-Mart is a chain store. The non-compete agreement distinguishes between chain stores and temporary venues. One portion prohibits Andrews from selling or attempting to sell "fireworks to retail chains (such as K-Mart) to which the Company sold products during the one (1) year period prior to and including the date of termination of his employment." Another clause prohibits Andrews from competing with B.J. Alan's temporary venues.
 {¶ 34} Furthermore, there are differences in the way that B.J. Alan operates its temporary venues and its relationship with K-Mart in Hawaii. B.J. Alan's website shows *Page 10 
where it operates temporary venues, but does not show that it operates any temporary venues in Hawaii. The person in charge of the Hawaii operation is B.J. Alan's director of chain stores, not the person in charge of temporary venues. Furthermore, the K-Marts are advertised as K-Mart stores, not B.J. Alan stores.
 {¶ 35} The record is clear that B.J. Alan's relationship to the K-Mart in Hawaii are substantially different than its relationships with chain stores in the continental United States. However, it does not appear that B.J. Alan itself considers these locations to be the type of temporary venues referenced in the non-compete agreement. Its website does not list them as temporary venues and those operations are not overseen by the person in charge of temporary venues. Instead, B.J. Alan itself appears to consider its K-Mart operation in Hawaii as part of its chain store operations. These facts show that neither party intended for B.J. Alan's K-Mart operations in Hawaii to qualify as "a temporary venue selling fireworks." The trial court's conclusion otherwise is not supported by the evidence.
 Reasonableness of Restrictions {¶ 36} Appellants argue that the non-compete clause cannot be enforced against Andrews as written because the geographic restrictions, particularly those dealing with locations where B.J. Alan "has had discussions or conducted investigations about establishing a permanent retail store," are unreasonably broad. Appellants especially object to the way in which some B.J. Alan employees interpreted the breadth of this clause.
 {¶ 37} B.J. Alan contends that Appellants should not be able to challenge the language used in the agreement since that language was the direct result of negotiations between B.J. Alan and Andrews. It further argues that the evidence in the record supports the conclusion that restriction is reasonable.
 {¶ 38} B.J. Alan overstates its position regarding Appellants' ability to challenge the reasonableness of the restrictions in the non-compete clause. Various cases from Ohio's appellate courts show that the fact that an employee negotiated the terms of a non-compete clause with an attorney's assistance is a factor which can be considered when *Page 11 
determining whether the restriction is reasonable. See Robert W. Clark,M.D., Inc. v. Mt. Carmel Health (1997), 124 Ohio App.3d 308, 317 (Fact that one party negotiated a con-compete clause with the assistance and advice of an attorney helps show that they understood that the other party could be irreparably harmed if the agreement was broken.);Wall v. Firelands Radiology, Inc. (1994), 106 Ohio App.3d 313, 332 (Fact that employee negotiated the terms of a non-compete clause with her employer with the advice and assistance of counsel helps show that the restraint did not impose an undue hardship on the employee.).
 {¶ 39} The fact that Andrews negotiated the terms of his non-compete clause with B.J. Alan does not conclusively prove that the non-compete clause is reasonable and thereby prevent any challenge to the reasonableness of that agreement. Instead, it is merely a fact to be considered when determining the reasonableness of the restrictions.
 {¶ 40} A non-compete clause prohibits a former employee from working in competition with his former employer and amounts to a restraint of trade, so these clauses will be enforced only to the extent that the restraints imposed are reasonably necessary to protect the employer's legitimate business interests. Brentlinger Enterprises v. Curran (2001),141 Ohio App.3d 640, 645, citing Raimonde v. Van Vlerah (1975),42 Ohio St.2d 21, 25-26. "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." Raimonde at paragraph two of the syllabus. The factors to consider when deciding whether a noncompete clause is reasonable include: 1) the absence or presence of limitations as to time and space, 2) whether the employee represents the sole contact with the customer, 3) whether the employee is possessed with confidential information or trade secrets, 4) whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition, 5) whether the covenant seeks to stifle the inherent skill and experience of the employee, 6) whether the benefit to the employer is disproportional to the detriment to the employee, 7) whether the covenant operates as a *Page 12 
bar to the employee's sole means of support, 8) whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment, and 9) whether the forbidden employment is merely incidental to the main employment. Id. at 25.
 {¶ 41} In this case, application of these factors shows that some sort of non-compete clause is reasonable and Appellants do not challenge this. Instead, they contend that the geographic restriction related to places where B. J. Alan had discussed or investigated opening a permanent retail store is unreasonable. Accordingly, we will focus on that particular issue.
 {¶ 42} Andrews worked as an executive for B. J. Alan, which exposed him to many, if not all, of their business operations and gave him access to confidential information, including customer or client lists, supplier lists, marketing strategies, and development plans. The primary purpose of the geographic restrictions in the non-compete agreement was to prevent Andrews from unfairly using that knowledge to compete with B.J. Alan immediately after he stopped working for the company.
 {¶ 43} The restrictions were a reasonable attempt to accomplish those goals. Andrews's employment with B.J. Alan is what gave him the skills to open and operate a retail fireworks store. Notably, the agreement does not prevent Andrews from using the knowledge of the candy business which he acquired prior to his employment with B.J. Alan. Furthermore, his employment with B.J. Alan gave him the information necessary to know that Glen Rock would be a good location for such a store.
 {¶ 44} The uncontro verted testimony of B.J. Alan employees showed that B.J. Alan had a great interest in being the first fireworks retail business in a particular location, since fireworks customers are very loyal to the store where they purchase fireworks. Furthermore, the seventy-five mile limit is the typical market for any of B.J. Alan's permanent fireworks stores.
 {¶ 45} There is no indication in the record that the limitation posed an undue hardship upon Andrews. For example, he was working in the candy industry prior to his employment with B.J. Alan and there is no indication that he could not go back into that *Page 13 
industry. Furthermore, Andrews negotiated the terms of the agreement with the assistance and advice of counsel, which resulted in an agreement which was more advantageous to him than the one which he was first offered.
 {¶ 46} Finally, there is no indication that the non-compete clause is injurious to the public in any way. This is not a case where an employer tries to prohibit necessary professional services, such as the practice of medicine.
 {¶ 47} Appellants' primary quarrel with the restriction is that B.J. Alan has tried interpreting the phrase "discussions" broadly, thereby incorporating the least of discussions which may have occurred about any location at any time into the agreement. However, the agreement does not need to be construed this broadly before it applies to the store Appellants established in Glen Rock. Clearly, the non-compete agreement contemplates that Andrews would not establish a store near a location where B.J. Alan was actively planning on building a permanent retail location. The record supports a finding that B.J. Alan was actively planning on building such a location near Glen Rock.
 {¶ 48} In conclusion, the non-compete agreement in this case was reasonable. Appellants' arguments to the contrary are meritless.
 Injunction {¶ 49} In their final argument, Appellants contend that the trial court erred when granting B.J. Alan's request for an injunction because B.J. Alan failed to demonstrate that it was irreparably harmed by Appellants' actions and because the public interest would not be served by the injunction. B.J. Alan maintains that there are multiple ways in which it demonstrated that it was irreparably harmed, including loss of customer goodwill, unfair competition, the increased chance that other employees would compete with the company in the future. B.J. Alan further argues that Andrews recognized this possibility when negotiating the terms of the non-compete clause since the clause explicitly states that B.J. Alan could seek an injunction to enforce the clause if it was breached by Andrews.
 {¶ 50} B.J. Alan sought and obtained an injunction against Appellants. "An injunction is an extraordinary remedy in equity that is available only where there is no *Page 14 
adequate remedy available at law." Brentlinger Enter. v. Curran (2001),141 Ohio App.3d 640, 646. A party requesting an injunction must show that 1) there is a substantial likelihood that the plaintiff will prevail on the merits, 2) the plaintiff will suffer irreparable injury if the injunction is not granted, 3) no third parties will be unjustifiably harmed if the injunction is granted, and 4) the public interest will be served by the injunction. Procter Gamble Co. v.Stoneham (2000), 140 Ohio App.3d 260, 267. No one of these factors is dispositive; they must all be flexibly balanced. Rock of Ages Memorial,Inc. v. Braido, 7th Dist. No. 00 BA 50, 2002-Ohio-0605, at 6.
 {¶ 51} In this case, the trial court determined the merits of the case at the hearing for the preliminary injunction. "A determination of the merits effectively renders moot the consideration of a `likelihood of success on the merits' for the preliminary injunction, and, accordingly, the decision to grant or deny a permanent injunction moots the issue of the right to a preliminary injunction." Procter Gamble at 269. Accordingly, this court need not address the likelihood of success. Furthermore, there is no dispute regarding whether the injunction would unjustifiably harm any third party. Accordingly, we will focus on the other two elements which must be established in an injunction action, those of irreparable harm and the public interest. However, before directly addressing these issues, we must briefly address B.J. Alan's argument about the agreement entitling it to an injunction.
 {¶ 52} The fact that the non-compete agreement specifically allows B.J. Alan to enjoin Andrews from breaching the agreement does not conclusively prove B.J. Alan's right to an injunction. The fact that Andrews had the assistance and advice of an attorney while negotiating this agreement with B.J. Alan shows that he understood that there was a possibility that B.J. Alan could be irreparably harmed if he breached the agreement. Robert W. Clark at 317. However, "a stipulation that any violation of the agreement would create [the right to an injunction] is insufficient to establish [that right]." TGR Ents., Inc. v. Kozhev,167 Ohio App.3d 29, 2006-Ohio-2915, at ¶ 36.
 {¶ 53} Appellants' main argument about the propriety of the trial court's decision to grant an injunction focus on their contention that B.J. Alan has failed to prove that it would be irreparably harmed by Appellants' actions. "Irreparable harm exists when there is a *Page 15 
substantial threat of a material injury which cannot be adequately compensated through monetary damages." Restivo v. Fifth Third Bank ofNorthwestern Ohio, N.A. (1996), 113 Ohio App.3d 516, 521. A party need not conclusively prove that they have suffered such a harm. "A threat of harm is a sufficient basis on which to grant injunctive relief."Procter Gamble at 274. However, such a threat cannot be merely theoretical, doubtful, or speculative; there must be a reasonable probability of such harm before a party is entitled to injunctive relief. Restivo at 520.
 {¶ 54} "Ohio courts have held that an actual threat of harm exists when an employee possesses knowledge of an employer's trade secrets and begins working in a position that causes him or her to compete directly with the former employer or the product line that the employee formerly supported." Procter Gamble at 274. A company is also irreparably harmed when an employee attempts to start his own business by taking away the customers he serviced while employed by the employer and by using the employer's own customer lists to build that new business.Blakeman's Valley Office Equip., Inc. v. Bierdeman, 152 Ohio App.3d 86,2003-Ohio-1074, at ¶ 37.
 {¶ 55} In this case, Appellants have started a business in an area where B.J. Alan was planning on erecting a permanent retail fireworks store. All of Andrews' knowledge of the fireworks business came from his employment with B.J. Alan. It would be impossible for Andrews not to use the concepts and ideas he learned at B.J. Alan when running his new business. For these reasons alone, B.J. Alan has shown, at the very least, a reasonable probability that Appellants' actions will irreparably harm B.J. Alan's future fireworks business in the Glen Rock area.
 {¶ 56} Appellants argue that B.J. Alan has failed to prove that this harm is irreparable since it did not introduce the testimony of an expert witness to show that the damages cannot be reliably calculated. However, B.J. Alan's employees were in a position to know the nature of the damage that Appellants' unfair competition posed to them and testified that it would be difficult to determine any precise monetary amount of damages. Furthermore, the type of damage Appellants are inflicting upon B.J. Alan "is precisely the type of irreparable harm that a covenant not to compete is designed to *Page 16 
prevent." Blakeman's Valley Office Equip. at ¶ 37.
 {¶ 57} The evidence supports the trial court's conclusion that B.J. Alan would suffer irreparable injury if Appellants were not enjoined from breaching Andrews' covenant not to compete with B.J. Alan for one year. Appellants' arguments to the contrary are meritless.
 {¶ 58} Appellants lastly argue that it is not in the public interest to enjoin them from selling fireworks because the people in the Glen Rock area would then have no easy access to retail fireworks. This argument is weak at best.
 {¶ 59} Courts have recognized that enforcement of non-compete agreements can be in the public interest. "Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." Blakeman's Valley OfficeEquip. at ¶ 39, citing Ratchford v. Proprietors' Ins. Co. (1989),47 Ohio St.3d 1, 8. There is no equivalent interest in the easy availability of retail fireworks to the public.
 {¶ 60} We cannot conclude that the trial court abused its discretion when it enjoined Appellants from competing in the retail distribution of fireworks in the area described in the agreement. The evidence supports the trial court's conclusion that B.J. Alan was irreparably harmed by Appellants' unfair competition and that enforcing the agreement is in the public interest. Appellants' arguments to the contrary all are meritless.
 Conclusion {¶ 61} Appellants challenge many aspects of the trial court's judgment enforcing the non-compete agreement between Andrews and B.J. Alan. However, the only argument which has merit is with regard to whether Appellants violated the terms of the agreement when operating a fireworks retail store in Hawaii. All of Appellants' other arguments are meritless. Accordingly, the judgment of the trial court is modified to reflect that Appellants' operations in Hawaii do not violate the terms of the non-compete agreement. In all other respects, the judgment of the trial court is affirmed.
 Vukovich, J., concurs. Reader, J., concurs. *Page 1