[Cite as *B.J. Alan Co. v. Andrews*, 2014-Ohio-2938.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| B.J. ALAN COMPANY, | ) | |
| | ) | CASE NO.    13 MA 55 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| FRED ANDREWS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 05CV3942.


JUDGMENT:                          Affirmed.


<u>APPEARANCES</u>:
For Plaintiff-Appellee:            Attorney Timothy Jacob
                                   201 East Commerce Street
                                   Atrium Level Two
                                   Youngstown, Ohio  44503-1641


For Defendant-Appellant:           Fred Andrews, *Pro se*
                                   P.O. Box 5590
                                   Poland, Ohio  44514


<u>JUDGES</u>:
Hon. Joseph J. Vukovich
Hon. Frank D. Celebrezze, Jr.,
Judge of the Eighth District Court of Appeals,
      Sitting by Assignment.
Hon. Kathleen A. Keough,
Judge of the Eighth District Court of Appeals,
      Sitting by Assignment.


                                   Dated:  June 20, 2014

VUKOVICH, J.

**{¶1}** Defendant-appellant Fred Andrews appeals the decision of the Mahoning County Common Pleas Court granting plaintiff-appellee B.J. Alan summary judgment on Andrews' counterclaim. Andrews argues that the trial court erred and destroyed his ability to defend B.J. Alan's summary judgment motion when it stayed discovery pending resolution of that summary judgment motion. After reviewing the summary judgment motions, the trial court found that the issues raised in the counterclaims were already decided by the trial court in its earlier decisions and in the appeals from those decisions.

**{¶2}** For the reasons expressed below, the judgment of the trial court is hereby affirmed. We hold that the trial court did not abuse its discretion in staying discovery pending the resolution of B.J. Alan's summary judgment motion. The issues raised in the counterclaim and the amended counterclaim did not require additional discovery because the issues were already decided by the trial court and this court in prior cases. Furthermore, the trial court did not err when it granted summary judgment for B.J. Alan.

<u>Statement of the Case and Facts</u>

**{¶3}** In 2005, B.J. Alan filed a complaint against Andrews seeking to enjoin Andrews from opening and operating retail fireworks stores. Andrews had been employed by B.J. Alan from 1994 until his resignation in 2005. In 2004, while working in B.J. Alan's fireworks operation as an executive, Andrews signed a non-compete clause. In 2005, after his resignation, Andrews opened or attempted to open retail fireworks stores in Pennsylvania and Hawaii.

**{¶4}** In response to the complaint, Andrews counterclaimed alleging that he was promised a bonus in 2004 and did not receive it.

**{¶5}** This case is the third appeal arising from the underlying actions. *B.J. Alan v. Andrews*, 7th Dist. No. 06MA151, 2007-Ohio-2608 (*B.J. Alan I*); *B.J. Alan v. Andrews*, 7th Dist. No. 10MA87, 2011-Ohio-5165 (*B.J. Alan II*).

**{¶6}** In *B.J. Alan I* we were asked to review the trial court's decision to grant an injunction in favor of B.J. Alan. We upheld the enforceability of the non-compete

clause and affirmed the trial court's decision to grant the injunction as to the Pennsylvania store. *B.J. Alan I* at ¶ 26-30, 36-61. However, as to the Hawaii store, we determined that the language of the non-compete agreement did not prohibit Andrews from operating his store in Hawaii. *Id.* at ¶ 31-35, 61. Thus, the trial court's order enjoining Andrews from operating the Hawaii store was reversed. *Id.*

**{¶7}** *B.J. Alan II* arose from Andrews' alleged violations of the injunction. As a result of those alleged violations B.J. Alan filed a motion to show cause. *B.J. Alan II* at ¶ 2. The trial court found Andrews in contempt of the injunction order, extended the injunction for 12 months, found that an award of attorney fees and costs in prosecuting the contempt proceeding was appropriate and just, fined him $250 and sentenced Andrews to 30 days in jail, but stated that Andrews could purge himself of the contempt and avoid serving a jail sentence by strictly complying with the order to refrain from competing for one year and by paying reasonable attorney fees and costs. *Id.* at ¶ 3-9. Thereafter, B.J. Alan filed a motion for attorney fees incurred in the prosecution of the contempt proceedings. The court found that $20,000 was a fair and reasonable amount. *Id.* at ¶ 12. Andrews appealed from those orders. *Id.* In *B.J. Allan II*, we affirmed the trial court's decisions. *Id.* at ¶ 32.

**{¶8}** Following the *B.J. Alan II* decision, Andrews moved to amend his counterclaim. 06/06/12 Motion. The original counterclaim was based on B.J. Alan's alleged promise to give Andrews a bonus in 2004 which did not happen. This counterclaim asserted breach of contract, promissory estoppel, unjust enrichment and negligent misrepresentation causes of action. Those causes of action were restated in the amended complaint and the additional causes of action of fraud and spoliation of evidence were added. 08/14/12 Amended Complaint. In his fraud claim, he asserted that all his previous allegations in the complaint indicate that B.J. Alan committed fraud. The spoliation of evidence claim is a general claim that B.J. Alan destroyed evidence to prevent Andrews from proving his case.

**{¶9}** The trial court granted the motion to amend. 07/10/12 J.E. The amended complaint was filed on August 14, 2012.

**{¶10}** The next day, B.J. Alan filed a motion for summary judgment. 08/15/12 Motion. In the motion, B.J. Alan asserted that the fraud claim was not pled with particularity, that there was no evidence of willful destruction of evidence, and that it turned over all evidence requested. As to the claims concerning the alleged bonus, it stated that the evidence shows that the bonus was discretionary and that our prior decision in 2007 even states as such.

**{¶11}** Andrews then asked for an extension of time to complete discovery, and the magistrate granted that request. 08/21/12 Motion; 09/05/12 J.E. The extension was granted until September 28, 2012.

**{¶12}** On August 29, 2012, Andrews filed his motion in opposition to summary judgment. Thereafter, Andrews gave notice to take the depositions of Bruce Zoldan, Jack Abell, Pete Frank, Timothy Jacob, Stephen Bolton and William Weimer. 09/11/12 Notice.

**{¶13}** A few days later, B.J. Alan moved to stay the magistrate's order extending time for discovery and moved to set aside that order. 09/14/12 Motions. In consideration of that motion, the magistrate issued an order stating that "the depositions scheduled for September 28, 2012 shall not go forward." 09/17/12 Magistrate Decision. Despite that order, Andrews filed two more production of discovery motions and one more notice of taking depositions. 09/19/12 and 10/01/12 Compel Discovery Motions; 09/24/12 Notice.

**{¶14}** A hearing on the motions for summary judgment occurred on September 28, 2012. At the conclusion of the hearing, the magistrate stayed discovery pending the outcome of the summary judgment motion. 09/28/12 Tr. 48.

**{¶15}** On October 2, 2012, B.J. Alan filed a motion for a protective order claiming Andrews filed a Notice to Compel Discovery and Depositions seeking a number of depositions for October 9, 2012. The basis for the protective order was the previous order staying discovery. B.J. Alan also indicated that Pete Frank no longer works for B.J. Alan. The trial court issued a protective order stating that based on previous orders discovery is stayed pending resolution of the summary judgment motion.

**{¶16}** On January 9, 2013, the magistrate granted B.J. Alan's motion for summary judgment. Based on the prior trial court opinions and appellate court decisions, it found that there were no issues of fact to be decided. 01/09/13 Magistrate's Decision. Andrews filed objections to that decision and in response B.J. Alan filed a motion in opposition to the objections. 01/22/13 Objections; 03/01/13 Opposition. The trial court overruled the objections and adopted the magistrate's decision as its own. 03/28/12 J.E. Andrews timely appeals *pro se*.

<u>Assignment of Error</u>

**{¶17}** "The trial court erred in entering judgment against Defendant, Fred Andrews after denying the Defendant's discovery, raised upon fraudulent representation of Plaintiff's counsel."

**{¶18}** At the outset, it is noted that the Andrews' brief is *pro se*. Since early 2011, Andrews has chosen to represent himself in the resolution of his counterclaims. The *pro se* brief raises arguments to support his position that the trial court's judgment should be reversed. However, the brief does not contain citations to law to support Andrews' position. App.R. 16(A)(7) requires citation to law. Regardless of this deficiency, we will still consider the arguments presented.

**{¶19}** The main contention of arguments raised in Andrews' brief is that when the court stayed the discovery pending the outcome of the summary judgment motion, it denied him the opportunity to defend the motion for summary judgment. Intertwined within this contention is his position that summary judgment should not have been granted in B.J. Alan's favor on his counterclaims.

**{¶20}** A trial court's decision to grant a stay of discovery pending the resolution of a dispositive motion is reviewed for an abuse of discretion. *Thomson v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 09AP–782, 2010–Ohio–416, ¶ 32. See also *Briggs v. Wilcox*, 2013-Ohio-1541, 991 N.E.2d 262, ¶ 43 (8th Dist.) (discussing that the decision whether to allow a Civ.R. 56(F) motion for additional time to complete discovery to defend a motion for summary judgment is within the trial court's discretion). An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or

unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying this standard of review, we may not freely substitute our judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).

**{¶21}** Considering the history of this case, we cannot conclude that the trial court abused its discretion when it stayed the discovery. The complaint was filed in 2005, more than seven years ago. Discovery has already occurred in this case. There was a final decision on the injunction in 2006 and an appeal from that decision. The decision from that appeal shows that the depositions of Zoldan and Weimer have already been taken. Plus, those individuals and Abell testified at the injunction hearing. Furthermore, there was also a contempt hearing following the first appeal and a contempt finding that was appealed to this court.

**{¶22}** The purpose of staying the discovery was to determine whether the counterclaim and amended counterclaim raised any new issue that was not decided by the trial court or the appellate court. If no new issue was raised then there was no need for additional discovery; the doctrines of res judicata and/or law-of-the-case would bar re-raising issues that were already litigated or could have been litigated. If there were new issues, then summary judgment would not have been granted and discovery would have proceeded.

**{¶23}** Therefore, the stay of discovery did not prevent him from defending the summary judgment motion. All he had to show was that the issues he was raising were new issues.

**{¶24}** The trial court correctly found that he did not meet that burden and thus, correctly granted summary judgment. We review a trial court's decision to grant summary judgment using a de novo standard of review. *Cole v. Am. Industries & Resources Corp.,* 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we apply the same test the trial court uses, which is set forth in Civ.R. 56(C). That rule provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is

entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming,* 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

{¶25} In the motion requesting summary judgment on Andrews' counterclaims, B.J. Alan argued that the issues raised were already decided in the previous rulings and appeals, and thus, the doctrines of res judicata and law-of-the-case applied.

{¶26} The doctrine of res judicata consists of two related concepts - claim preclusion and issue preclusion. *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). Claim preclusion holds that a valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). Issue preclusion holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Id.*

{¶27} Under the law-of-the-case doctrine, "an inferior court must act in accordance with the ruling of a reviewing court *when conducting subsequent proceedings on the same matter.*" (Emphasis added.) *Unick v. Pro–Cision, Inc.,* 7th Dist. No. 09MA171, 2011–Ohio–1342, ¶ 44, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings *in the case* at both the trial and reviewing levels." (Emphasis added.) *Nolan* at 3.

{¶28} In the original counterclaim and in the amended counterclaim, Andrews contends that there was an agreement between himself and Bruce Zoldan that he would receive a bonus. He claims that he signed the non-compete clause because he was told that if he signed it he would get both a raise and a bonus. In this

argument, Andrews is claiming that the raise and bonus is consideration for him entering into the non-compete contract.

**{¶29}** This type of argument could have been raised as a defense to the injunction. Likewise, it could have been raised in the 2006 appeal. However, it was not; Andrews did not argue in *B.J. Alan I* that B.J. Alan did not perform their part of the contract by failing to pay the bonus. Instead he conceded that he did not get a bonus because he insisted on negotiating the terms of his non-compete clause. In arguing that he had good reason to terminate his employment with B.J. Alan, he stated that "he was denied a bonus because of his insistence to negotiate the terms of non-compete clause." *B.J. Alan I*, 7th Dist. No. 06MA151, 2007-Ohio-2608 at ¶ 19. Thus, Andrews abandoned the theory that the contract for a bonus was not performed and instead pursued the theory that there was no consideration for the non-compete clause, and thus, it could not be an enforceable contract. *Id.* at ¶ 10.

**{¶30}** In *B.J. Alan I*, we found no merit with the consideration argument he presented. *Id.* at ¶ 12-18. We stated that the terms of the non-compete clause were made by mutual agreement. *Id.* at ¶ 13-14. We cited the Ohio Supreme Court for the position that the presentation of a noncompetition agreement by an employer to an at-will employee is, in effect, a proposal to renegotiate the terms of the parties' at-will employment. *Id.* at ¶ 16, citing *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-0786, ¶ 19. Thus, the promise of continued employment is sufficient consideration to support the enforcement of a non-compete agreement entered into by the two parties. We then stated:

> In this case, Andrews was an at-will employee of B.J. Alan. **There is no evidence that the parties ever entered into a contract either before or after they signed the non-compete clause.** After the parties signed the non-compete clause, Andrews continued his employment with B.J. Alan. Accordingly, there was sufficient consideration supporting the agreement to make it enforceable.

(Emphasis Added.) *B.J. Alan I* at ¶ 17.

{¶31} Consequently, our decision indicates that there was no evidence that there was a contract between the parties concerning the bonus. That determination is the law-of-the-case and Andrews is barred by that doctrine and res judicata from now attempting to change his theory of the case. Therefore, the claims in the original counterclaim that were reasserted in the amended counterclaim fail and summary judgment was appropriately granted on them.

{¶32} The remaining causes of action in the amended counterclaim are spoliation/discovery violations and fraud. These claims deal with the alleged contract for the bonus and the retail store in Shrewsbury, Pennsylvania/Glen Rock, Pennsylvania.

{¶33} Beginning with the fraud counterclaim based on the alleged contract for the bonus, this claim fails based on law of the case and res judicata doctrines. As explained above, the contract for a bonus was already raised or could have been raised in the prior rulings and appeals of those rulings. Thus, that claim fails.

{¶34} As to the spoliation and fraud claims in regards to the retail store in Shrewsbury, Pennsylvania, these claims also fail based on res judicata and/or law of the case. In *B.J. Alan I*, B.J. Alan's intent to have a retail location in Pennsylvania and whether Andrews violated the non-compete agreement by opening or attempting to open a store in Pennsylvania was litigated. In that decision, we found that the evidence supported the magistrate's conclusion that Andrews knew that B.J. Alan had an interest in establishing a business in that area in Pennsylvania. *B.J. Alan I*, 7th Dist. No. 06MA151, 2007-Ohio-2608, at ¶ 26-30. It seems that now Andrews is asserting that B.J. Alan had no intention of opening a retail store in Shrewsbury, Pennsylvania and thus, is guilty of fraud and spoiling evidence violations that would prove that. This argument, like the above argument regarding the bonus, should have been raised in the injunction matter, *B.J. Alan I* or in the contempt matter in *B.J. Alan II*. However, it was not. Our decision in *B.J. Alan I* indicates that Andrews knew of B.J. Alan's intent to open a retail store in that location. Thus, he cannot now claim that there was no intention on B.J. Alan's part to open a store in that area. This is merely an attempt to re-litigate an issue that has already been decided.

**{¶35}** Therefore, for the reasons expressed above, this assignment of error lacks merit.  The judgment of the trial court is hereby affirmed.


Celebrezze, J., concurs.
Keough, J., concurs.