DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of a judgment of the Ottawa County Court of Common Pleas which granted appellees Ballard and Elma Childers' motion for summary judgment. For the reasons that follow, we affirm the judgment of the trial court, albeit on a different basis.
 {¶ 2} This case arises from a dispute over appellants' alleged rights to use and enjoyment of a parcel of land in the Harborside Subdivision "A" of Catawba Island Township, Ottawa County, Ohio. The parcel in dispute is known as the portion of Center *Page 2 
Lane (which runs west to east) which is east of Harbor Lane (which runs north to south). Appellants are owners of Lots 4 through 15 which are located west of Harbor Lane . Appellees are owners of Lot 3 and Lot A, which are east of Harbor Lane and abut the subject portion of Center Lane.
 {¶ 3} In the 1948 replat of the subdivision, it states that the lanes (including Center Lane) "* * * shall be regarded as private thoroughfares" and are "* * * dedicated to the use of the owners of the lots in said subdivision, * * *." In 1975, the owners of the subdivision at the time of the 1948 replat, Emery and Bertrice Qualman, sold their interest in "Lot `D', Lot `A', Lot `C', and the North Lane, Middle Lane, Harbor Lane and Center Lane" to appellees. In July 1998, appellees purchased Lot 3.
 {¶ 4} On December 30, 1998, appellees submitted an application for the replat of Lot 3. Appellees sought to combine Lot 3, Lot A, and the subject portion of Center Lane into a replatted Lot 3. As stated in an affidavit of appellee Elma L. Childers, "[t]he purpose of this replat was to combine all of these parcels into one lot and to extinguish the portion of Center Lane from the subdivision."
 {¶ 5} During a January 19, 1999 regular meeting, the Ottawa Regional Planning Commission ("ORPC") approved the replat without appellants' consent. The ORPC required only the written consent of the owners of Lot 2, which was adjacent to Lot 3, considering them to be the only parties "injuriously affected" by the replat. In July 1999, said replat document titled "Replat of Lot 3, all of Lot A, part of Lot B part of Center *Page 3 
Lane," and legally described as "all of Lot 3, all of Lot A, part of Lot B, and part of Center Lane * * *" was recorded in the Ottawa County Recorders Office.
 {¶ 6} Subsequently, appellants raised concerns about the replat at a Catawba Island Township meeting due to changes appellees were making to the subject portion of Center Lane. Walter Wehenkel, the ORPC Director, requested that Mark E. Mulligan, Ottawa County Prosecuting Attorney, research the issue of the effect of the 1999 replat. In an October 21, 1999 letter to the Ottawa County Commissioners, Mulligan opined that Center Lane still existed and appellants' rights to Center Lane continued.
 {¶ 7} On January 26, 2004, appellants filed a complaint seeking injunctive relief restraining appellees from obstructing an easement appellants allegedly own in Center Lane. In their answer, among other defenses, appellees asserted the affirmative defense of appellants' failure to exhaust their administrative remedies.
 {¶ 8} In an April 18, 2006 opinion and judgment entry granting summary judgment to appellees, the trial court found that appellants have no interest in Center Lane as appearing on the 1948 replat; Center Lane east of Harbor Lane was subsumed into Lot 3 by the July 1999 replat; and appellants' rights of ingress, egress and access to the waters of West Harbor lie across Lot C pursuant to Qualman v. Starkey (July 17, 1957), Ottawa C.P. No. 13787.
 {¶ 9} Appellants' single assignment of error simply states:
 {¶ 10} "The Trial Court's Decision and Order" *Page 4 
 {¶ 11} Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 12} Appellants argue that material questions of fact remain regarding their property rights relative to Center Lane after the 1999 replat. Citing the affidavit of ORPC Director Wehenkel and the October 1999 opinion letter of Prosecutor Mulligan, appellants specifically assert that the 1999 replat did not eliminate, extinguish, or vacate any portion of Center Lane. In addition, appellants contend that the 1957 case of Qualman declared the status of property rights to Lot "C" only. Therefore, appellants *Page 5 
claim that the trial court erred in utilizing Qualman in any fashion as part of its summary judgment decision relative to Center Lane. In response, appellees argue that the 1999 replat clearly did affect Center Lane; they went through the proper R.C. 711.24 procedure to effect the 1999 replat, and pursuant to Clagg v. Baycliffs Corp.,82 Ohio St.3d 277, 1998-Ohio-414, summary judgment for appellees was proper since appellants failed to exhaust the administrative appeal process of R.C. Chapter 2506.
 {¶ 13} At the outset, we note that, in their reply brief, appellants claim that appellees' appellate brief should be stricken in its entirety as nonresponsive to the arguments raised in appellants' assignment of error. However, we disagree with this contention. We will consider appellees' appellate brief arguments in our de novo review of the summary judgment ruling because they were part of the summary judgment record before the trial court. Likewise, we will consider appellants' summary judgment arguments as presented in their trial court brief. This is the nature of a de novo review-independent and without deference to the trial court's determination.
 {¶ 14} We find that an analysis of appellants' rights in Center Lane under the "original" 1948 replat is a necessary starting point in this case. Appellants have claimed that their rights in Center Lane are "express or more than `implied.''' Appellees assert that appellants' right was merely an implied easement in Center Lane. We agree with appellees.
 {¶ 15} In the original 1948 plat dedication, it states the following relative to all the lanes, including Center Lane: *Page 6 
 {¶ 16} "* * * the streets or lanes shown hereon and designated as North Lane, Middle Lane, Center Lane and Harbor Lane, are hereby dedicated to the use of the owners of the lots in said subdivision, their heirs or assigns or to any tenants or lessees of the undersigned owners or said lessees their heirs or assigns and are to be shared in common with the undersigned owners, their guests, heirs or assigns.
 {¶ 17} "* * *
 {¶ 18} "The above mentioned lanes shall be regarded as private thoroughfares, except as to persons designated by the undersigned owners. * * *" (Emphasis added.)
 {¶ 19} In Harbor Island Association, Inc. v. Ottawa Regional PlanningCommission, 6th Dist. No. OT-03-005, 2003-Ohio-5858, similar to the present case, the appellant claimed that a roadway, which was established in an original plat, created an express easement. We stated:
 {¶ 20} "The existence of an express easement involves the construction of an instrument of conveyance and is, therefore, a matter of law if the terms of the instrument are clear and unambiguous. See Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus." Harbor Island, ¶ 19. Further:
 {¶ 21} "`An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former.' Yeager v. Tuning
(1908), 79 Ohio St. 121, 124. The express easement must be set forth in the language of the deed, lease, etc. Kamenar Railroad Salvage, Inc. v.Ohio Edison Co. (1992), 79 Ohio App.3d 685, 689. No particular words are required, *Page 7 
but the language used must evidence an intent to create an easement.Nedolast v. Frankart, (Oct. 20, 1999), 6th Dist. No. 13-99-19. Once created, the easement must appear in the chain of title of the dominant parcel. Pence v. Darst (1989), 62 Ohio App.3d 32, 37." Hammond v.Klonowski (June 29, 2001), Erie App. No. E-00-044; Harbor Island, ¶ 19-20.
 {¶ 22} We have noted express easements have been found for such rights as a contractual gas pipeline right-of-way and an easement written in a deed of conveyance for "`walkway purposes only'" over the lot of an adjoining landowner. Clagg v. Baycliffs Corp. (Mar. 7, 1997), 6th Dist. No. OT-96-023 citing Malcuit v. Equity Oil Gas Funds, Inc. (1992),81 Ohio App.3d 236 and Hollosy v. Gershkowitz (1950), 88 Ohio App. 198.
 {¶ 23} In Harbor Island, the original plat restrictions language referred to granting the lot owners the right to "` * * * [u]se of the extension westerly and northerly of the North Shore Blvd. for roadway purposes to provide access to public highways thereover; * * *.'" Id. ¶ 16. We determined that this language did not clearly and unambiguously create an express easement for the appellant-lot owner's benefit. Id. ¶ 21. We acknowledged the appellant's right to use North Shore Blvd., but found that there was no indication that the appellant's right attached to the specific location where the roadway was placed in the original plat. Id.
 {¶ 24} Similar to Harbor Island, in the present case, we find that the language in the 1948 replat does not clearly and unambiguously create an express easement for appellants' benefit. The document generally grants appellants the right to use Center *Page 8 
Lane. However, there is no indication that appellants' right attached to the specific location where the roadway was placed in the original 1948 replat or to the specific extent of the original 1948 replat. Accordingly, we find that appellants were never granted any express easement over Center Lane in the exact location or to the exact extent of the 1948 replat.
 {¶ 25} Since we have determined that appellants had, at most, an implied easement in Center Lane under the 1948 replat, pursuant toClagg v. Baycliffs Corp., 82 Ohio St.3d 277, 1998-Ohio-414, R.C. 711.24
applies to the 1999 replat. In Clagg, the court held that "[a]n implied easement in a private street, created by reference to a subdivision plat depicting and dedicating the street to the lot owners of a subdivision, is statutorily limited so that an owner of land within the subdivision may unilaterally change the course of the street subject to the requirements set forth in R.C. 711.24." Id. at syllabus.
 {¶ 26} R.C. 711.24 provides:
 {¶ 27} "Any person owning, either jointly or severally, and either in his own right or in trust, and having the legal title to any land laid out in town lots, not within the limits or subject to the control of a municipal corporation, may change such lots and the streets and alleys bounding them by making, acknowledging, and having recorded, as provided in sections 711.01 to 711.38, inclusive, of the Revised Code, a new plat of such land, and having the proper transfers made in the office of the county auditor. No such change shall be made if it injuriously affects any lots on the streets or alleys, or within the plat so changed, unless all the owners of the lots so affected are parties joining in making the *Page 9 
change, or such owners give their consent in writing on the new plat, which is recorded therewith. Any change of a town plat made under this section shall have the same effect as if made by the judgment of a court having jurisdiction thereof."
 {¶ 28} In Clagg, the court also held that because R.C. 711.24 limited the easement rights of the appellants and because the appellants failed to exhaust their administrative remedies through a R.C. 2506.01 appeal of the ORPC determination that the appellants were not injuriously affected, the declaratory and injunctive relief the appellants sought had to be denied. Clagg at 281. Therefore, summary judgment for the appellees was affirmed.
 {¶ 29} Similar to Clagg, in the present case, we find that the change made to Center Lane in the proposed 1999 replat falls under the changes subject to the R.C. 711.24 process.[1] Further, it is clear that the ORPC approved the 1999 replat proposed by appellees, under the authority of R.C. 711.24, finding that appellants were not injuriously affected by the replat. Similar to Clagg, because appellants failed to appeal the ORPC decision pursuant to R.C. Chapter 2506, we will not pass upon the merits of that factual finding by the ORPC. See Clagg at 279.
 {¶ 30} We note that appellants have pointed to the affidavit of the ORPC Director Walter Wehenkel and an October 21, 1999 opinion letter by Ottawa County Prosecuting *Page 10 
Attorney Mark E. Mulligan to the effect that the 1999 replat did not change any of appellants' property rights relative to Center Lane. However, it was clear from appellees' activities on the subject portion of Center Lane immediately after the 1999 replat, that appellants could have appealed the allegedly injurious replat via the appropriate R.C. Chapter 2506 process. Appellants did not. Summary judgment for appellees must be affirmed.
 {¶ 31} Further, although the trial court based its summary judgment decision on a substantive legal determination of the parties' rights relative to the subject portion of Center Lane after the 1999 replat, we decline to do so. Appellees' answer and summary judgment motion raised the affirmative defense of failure to exhaust administrative remedies and, under our de novo review of the summary judgment issues, that is our basis for affirming the order of summary judgment for appellees. We affirm summary judgment for appellees, albeit on a different basis than the trial court.[2] Appellants' assignment of error is found not well-taken.
 {¶ 32} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App .R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County. *Page 11 
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR.
[1] We note that although R.C. 711.24 was enacted in 1953, C.G. 3600, which contains substantially the same language as R.C. 711.24 was in effect when the 1948 replat was recorded and Center Lane was dedicated. Thus, the statutory language was in effect prior to the creation of the implied easement in question and it applies to this case. See Clagg v.Baycliffs, Corp. (Mar. 7, 1997), 6th Dist. No. OT-96-023, FN4.
[2] See Evans v. Supreme Court of Ohio, 10th Dist. No. 02AP-736, 2003-Ohio-959, 10. *Page 1