[Cite as *Capital One Bank (USA), NA v. Reese*, 2015-Ohio-4023.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| CAPITAL ONE BANK (USA), NA, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-P-0034** |
| KAREN L. REESE, | : | |
| Defendant-Third Party Plaintiff-Appellant. | : | |
| | : | |
| - vs - | : | |
| MORGAN & POTTINGER, P.S.C., et al., | : | |
| Third Party Defendants-Appellees. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2010 CV 00449.

Judgment: Affirmed.

*Rik S. Tozzi*, Burr & Forman, LLP, 420 North 20th Street, Suite 3400, Birmingham, AL 35203 (For Plaintiff-Appellee).

*Anand N. Misra*, The Misra Law Firm, L.L.C., 3659 Green Road, #100, Beachwood, OH 44122; *Robert S. Belovich*, 9100 South Hills Boulevard, Suite 320, Broadview Heights, OH 44147 (For Defendant-Third Party Plaintiff-Appellant).

*Lori E. Brown* and *Holly Olarczuk-Smith*, Gallagher Sharp, Sixth Floor, Bulkley Building, 1501 Euclid Avenue, Cleveland, OH 44115 (For Third Party Defendants-Appellees).

COLLEEN MARY O'TOOLE, J.

{¶1} Karen Henry, f/n/a Reese, appeals from the summary judgment granted by the Portage County Court of Common Pleas to Capital One Bank (USA) N.A. ("Capital One") on its claim for debt owed on a credit card, as well as the summary judgments granted Capital One and Morgan & Pottinger, P.S.C. and Michael J. Linden ("M & P") on her counterclaims for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq., fraud, abuse of process, defamation, and civil conspiracy. Finding no error, we affirm.

{¶2} In 2002, Ms. Henry applied for and received a credit card from Capital One. She submitted a signed application, and received a customer agreement governing the account's terms. She ceased making payments on her account in June 2005. Capital One introduced evidence that $1,908.51 remained due on the account.

{¶3} In December 2002, Capital One designated the receivables arising from Ms. Henry's account for securitization through the Capital One Compass Master Note Trust. The Compass Trust was dissolved in July 2006, and the securitized receivables transferred back, eventually, to Capital One.

{¶4} December 3, 2007, Capital One, through its counsel M & P, filed an action against Ms. Henry in the Portage County Municipal Court regarding her credit account. After the magistrate had issued a decision in that case, but before that decision was adopted by the municipal court, Capital One voluntarily dismissed the action December 11, 2008. Thereafter, July 6, 2009 Capital One filed the present action in the municipal court. Ms. Henry answered December 21, 2009, denying all allegations. She later filed

2

an amended answer, with class action counterclaims, against Capital One, with M & P as a third party defendant. The case was transferred to the Portage County Court of Common Pleas.

{¶5} July 15, 2010, Ms. Henry filed her first amended counterclaim, containing the various causes of action described above. Discovery was had, and the parties entered an agreed protective order. M & P also moved for a protective order regarding Ms. Henry's class action discovery, which the trial court granted, until it ruled on dispositive motions.

{¶6} October 27, 2011, Capital One and M & P filed motions for summary judgment on Ms. Henry's counterclaims. Ms. Henry moved pursuant to Civ.R. 56(F) for additional discovery to respond. December 23, 2011, the trial court granted Ms. Henry an additional 90 days to complete discovery and file her oppositions to the summary judgment motions. Eventually, her deadline was extended to June 4, 2012. Ms. Henry filed her opposition brief that date, and further filed a supplemental Civ.R. 56(F) memorandum, alleging incomplete answers to various requests for discovery, and by certain defense deponents. Capital One denied these allegations, and pointed out Ms. Henry had never moved to compel discovery.

{¶7} Capital One and M & P filed their reply briefs in support of summary judgment in July 2012. July 24, 2012, the trial court ordered that all parties would have an additional 21 days to supplement their memoranda and supporting affidavits.

{¶8} August 14, 2012, Ms. Henry filed her supplemental brief in opposition to summary judgment, and moved to strike certain evidence and arguments submitted by

3

Capital One in reply to her brief in opposition. September 21, 2012, the trial court denied the motion to strike.

{¶9} October 31, 2012, the trial court granted the motions for summary judgment. December 3, 2012, it issued a nunc pro tunc entry, clarifying that Capital One's complaint against Ms. Henry remained pending.

{¶10} November 29, 2012, Ms. Henry had appealed the trial court's October 31, 2012 judgment entry. March 26, 2013, this court dismissed the appeal for lack of a final appealable order, since the original complaint remained pending. *Capital One Bank (USA), NA v. Reese*, 11th Dist. Portage No. 2012-P-0155, 2013-Ohio-1101, ¶12.

{¶11} January 22, 2014, Capital One moved for summary judgment on its complaint. Ms. Henry opposed February 21, 2014. June 2, 2014, the trial court granted the motion for summary judgment.

{¶12} Ms. Henry timely noticed this appeal, assigning 15 errors.

{¶13} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66, * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

{¶14} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, * * * (1980). Rather, all doubts and questions

4

must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359, * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law?' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, * * * (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

{¶15} For her first assignment of error, Ms. Henry states: "The trial court committed prejudicial error by employing the incorrect standard for determination of summary judgment under Civ.R. 56." Ms. Henry alleges the trial court required her to prove the facts of her counterclaim, rather than construing the evidence in her favor. In support, she points to the following statements by the trial court in its October 31, 2012 judgment entry: (1) "There is no genuine issue of material fact, and Defendant Reese cannot prove the essential elements of her claims"; (2) "Counterclaim Plaintiff has failed to support her allegations in the First Amended Counterclaim"; and (3) "The defamation claim is not proved, and summary judgment is the appropriate remedy."

{¶16} We respectfully decline to find that these statements by the trial court indicate it applied an inappropriate standard in granting the summary judgment motions at issue. The first sentence complained of is simply the trial court's initial statement,

5

having set forth the facts and procedural history, of its ultimate conclusion that Ms. Henry could, under no circumstances, prove the essential elements of her claims. The same applies to the second sentence. And while the phrasing of the third sentence may be unfortunate, it is perfectly appropriate if the trial court concluded Ms. Henry presented no evidence of defamation.

{¶17} The first assignment of error lacks merit.

{¶18} For her second assignment of error, Ms. Henry states: "The trial court committed prejudicial error in failing to address evidence of the Payment Protection Plan and granting summary judgment to plaintiff-appellee on its complaint." Ms. Henry **had** a payment protection plan with Capital One, covering her account. At a certain point, she became unemployed, and alleged she informed Capital One of this fact. She asserts the payment protection plan absolved her of any duty to make further payments on the debt.

{¶19} As Capital One points out, payment is an affirmative defense, which is waived if not pleaded. *See, e.g.*, Civ.R. 8(C); *Stanwade Metal Products, Inc. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196, ¶22 (11th Dist.) (An affirmative defense may not be raised initially in summary judgment proceedings). In this case, Ms. Henry did not assert the payment protection plan until she opposed Capital One's summary judgment motion. Capital One further notes Ms. Henry never introduced a copy of the protection payment plan into evidence.

{¶20} Ms. Henry counters she requested copies of any insurance agreement covering her account in her initial request for production of documents, and that she preserved her right to amend her answer based on discovery. Capital One, in its

6

response to Ms. Henry's request for production, alleged it was overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Further, Ms. Henry did submit certain statements indicating she was being charged for the payment protection plan.

{¶21} We note Capital One's failure to respond to the request for production at issue. While Ms. Henry may have had an obligation to preserve all her copies of agreements regarding the credit account, her request was neither overly broad, nor unduly burdensome – and it was certainly designed to elicit highly relevant, admissible evidence. If she was covered at the time of her default, the debt may have been covered by the payment protection plan.

{¶22} Nevertheless, we do not find error. First, Capital One eventually did enter into evidence card statements showing Ms. Henry had been dropped from the payment protection plan some months before her default. Second, Ms. Henry never moved the trial court under Civ.R. 37 for an order to compel production. The trial court was remarkably generous in granting all the parties discovery and opportunity to supplement their evidence and briefs. If the payment protection plan formed a centerpiece of Ms. Henry's case, and given the fact Capital One had not responded to her reasonable request for production of the plan, the trial court may well have compelled Capital One to respond. But Ms. Henry never made the motion.

{¶23} The second assignment of error lacks merit.

{¶24} For her third assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that the collection case filed against Ms. Henry was not time-barred." Her fourth assignment of error is: "The trial court committed

7

prejudicial error in finding that the current collection case was a permissible re-filing of an earlier case, when the two cases alleged two different accounts." Ms. Henry's arguments under these assignments of error are intertwined, encompassing a single course of reasoning. Consequently, we analyze them together, and in reverse order.

{¶25} Initially, Ms. Henry suggests that the action herein is time barred by application of R.C. 1109.69. That statute requires banks to maintain certain records for either one or six years. R.C. 1109.69(A) and (B). R.C. 1109.69(A)(1)(h) states that banks must retain "records relating to closed consumer credit loans and discounts [for one year], after date of closing[.]" Ms. Henry's account was closed in September or October 2005. R.C. 1109.69(F) provides: "Any action *by* or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in divisions (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved." (Emphasis added.) The initial filing of this matter occurred in December 2007 – well beyond the one year set forth in R.C. 1109.69.

{¶26} We respectfully decline to apply R.C. 1109.69 in the fashion suggested by Ms. Henry. First, she does not point to any case construing R.C. 1109.69(A)(1)(h) as applying to credit card actions. Second, as Capital One points out, it is a national bank. "'Business activities of national banks are controlled by the National Bank Act (NBA or Act), 12 U.S.C. § 1 et seq., and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC).' *Watters v. Wachovia Bank, N.A.* (2007), 550 U.S. 1, 6, * * *." (Parallel citations omitted.) *Citibank (South Dakota), NA v. Eckmeyer*, 11th

8

Dist. Portage No. 2008-P-0069, 2009-Ohio-2435, ¶28. Absent authority, we hesitate to apply the statute in this case.

{¶27} More significantly, Ms. Henry argues the present case was not a re-filing of the first collection action brought against her, December 3, 2007. She relies on the fact the account number set forth in the initial action was different than that in this case, and that the plaintiff in the initial action was "Capital One Bank," rather than "Capital One Bank (USA) N.A." Capital One points out the sums claimed were exactly the same, and that the trial court found the difference in the account numbers was a typographical error. It further notes the change in name occurred due to its own change from a Virginia bank to a national bank. We find Ms. Henry's arguments unconvincing.

{¶28} Ms. Henry also argues any re-filing was barred by res judicata, since the initial complaint was dismissed by the municipal court's magistrate for want of prosecution, and Capital One did not file its voluntary dismissal of the case until the time for filing objections to the magistrate's opinion had passed. Capital One replies that she never raised this argument to the trial court, and thus, it was waived. We agree. *Grand Key Condominium Unit Owners Assn., Inc. v. Hounshell*, 11th Dist. Lake No. 2013-L-023, 2014-Ohio-1355, ¶11. Capital One also points out the municipal court had not yet adopted its magistrate's decision at the time of the voluntary dismissal, so no judgment had been entered, rendering the voluntary dismissal effective. *See, e.g.*, *Tallmadge v. Barker*, 9th Dist. Summit No. 24414, 2009-Ohio-1334.

{¶29} The question of whether this was a validly re-filed action is significant, since it controls the outcome of Ms. Henry's third assignment of error – i.e., that the collection action against her was time barred.

9

{¶30} First, Ms. Henry argues that her cause of action accrued in Capital One's home state, Virginia, thus requiring the trial court to apply Ohio's borrowing statute, R.C. 2305.03(B), mandating, essentially, that the courts of Ohio apply the shortest limitations period to actions accruing outside this state – that of Ohio, or that of the foreign jurisdiction. Virginia has significantly shorter limitations periods than Ohio regarding contracts: five years on written contracts; three years for oral contracts. Va. Code Ann. § 8.01-246(2) and (4). For her contention that Virginia law controls, Ms. Henry cites to the decision in *Jarvis v. First Resolution Invest. Corp.*, 9th Dist. Summit No. 26042, 2012-Ohio-5653. In that case, the Ninth District, applying the "most significant relationship test," determined the three year Delaware statute of limitations applied in a credit card case wherein the debtor resided in Ohio, since Delaware had the most significant relationship to the contract. *Id.* at ¶22-29. The basis for this determination included the fact the debtor's credit card application became a contract when it was mailed to, and accepted in, Delaware, and that the performance required of debtor was that the creditor receive timely payments in Delaware. *Id.* at ¶27.[1]

{¶31} Capital One is headquartered in Virginia.

{¶32} Ms. Henry then directs our attention to the decision in *Mohammed v. Capital One Bank*, Fla. Cir. Ct. 11th Jud. Dist. App. Div., Nos. 08-016 AP, 08-031 AP, and 08-434 AP (April 29, 2009). In that case, the court reversed the decision of the trial court, applying the five year Virginia statute of limitations for written contracts to three credit card actions. *Id.* at 2, 6. The circuit court concluded the contracts were oral

---

1. The Ninth District's decision was accepted for discretionary review by the Supreme Court of Ohio in *Jarvis v. First Resolution Invest. Corp.*, 135 Ohio St.3d 1412, 2013-Ohio-1622. The propositions of law under review by that court include one dealing with where a credit card action accrues for limitations purposes. The matter was submitted, following argument, in November 2013, and remains pending.

10

contracts under Virginia law, on the basis that the terms of the contract were not fully set forth in the signed writings. *Id.* at 4-6. Under the authority of *Mohammed*, Ms. Henry asserts her contract with Capital One was subject to Virginia's three year statute of limitations for oral contracts.

**{¶33}** Ms. Henry ceased payments in June 2005. Her account was considered closed, or in default, in September or October 2005. The instant action was not filed until July 6, 2009 – outside the three year limitations period for oral contracts under Virginia law. On that basis she argues it was time barred. We have already indicated the July 6, 2009 complaint was a proper re-filing of the original December 3, 2007 complaint, which was timely under Virginia law. [2]

**{¶34}** However, Ms. Henry further contends the Ohio savings statute, R.C. 2305.19(A), which mandates that an action may be re-filed within one year, does not apply. She argues the Virginia savings statute, which only allows for a six month period to re-file, is applicable. Va. Code Ann. § 8.01-229(E)(3). As the action was re-filed almost seven months after its dismissal December 11, 2008, it would be time-barred if the Virginia savings statute applied.

**{¶35}** Ms. Henry cites no authority for the proposition that the Virginia savings statute applies, and we are not required to consider it. App.R. 12(A)(2) and 16(A)(7). More significant, application of the shorter Virginia savings period would violate Ohio public policy. The Ohio savings statute is remedial, and "should be given a liberal construction to permit the decision of cases upon their merits rather than upon mere

---

2. As Capital One notes, Ms. Henry's reliance on the decision in *Mohammed*, *supra*, is likely incorrect. After its publication, the Virginia Attorney General opined that credit card agreements are subject to the five year statute of limitations for written contracts. 2011 Virginia Atty.Gen. Ops. No. 10-128.

technicalities of procedure." *Cero Realty Corp. v. Am. Mfr. Mut. Ins. Co.*, 171 Ohio St. 82, 85 (1960).

**{¶36}** This action was timely re-filed. And even applying the law most favorable to Ms. Henry's position, and construing the facts in her favor, it was not time barred. The third and fourth assignments of error lack merit.

**{¶37}** For her fifth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that the identity of the real party in interest, for the claim asserted against Ms. Henry, was not concealed or misrepresented by appellees." Ms. Henry notes that, under the FDCPA, a clearly false representation of the creditor's name may be a violation. *Wallace v. Washington Mut. Bank*, 683 F.3d 323, 327 (6th Cir.2012). She alleges that, apart from Capital One, the evidence indicates the creditor may have been one of three other entities: "Capital One Services"; "NCO Financial Systems, Inc."; or, a "securitization trust." She contends this presents a jury question as to whether Capital One tried to misrepresent the identity and name of the real party in interest.

**{¶38}** "Pursuant to Civ.R. 17, a civil action must be prosecuted by the real party in interest. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178, * * *. The 'real party in interest is generally considered to be the person who can discharge the claim on which the suit is brought (* * *) (or) is the party who, by substantive law, possesses the right to be enforced.' *In re Highland Holiday Subdivision* (1971), 27 Ohio App.2d 237, 240, * * *. Unless the party has some real interest in the subject matter of the action, that party will lack standing to invoke the jurisdiction of the court. *Id.* In a breach of contract claim, only a party to the contract or

an intended third-party beneficiary of the contract may bring an action on a contract in Ohio. *Grant Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 161, * * *." (Parallel citations omitted.) *Discover Bank v. Brockmeier*, 12th Dist. Warren No. CA2006-07-078, 2007-Ohio-1552, ¶7.

**{¶39}** Further, Civ.R. 19 provides, in pertinent part:

**{¶40}** "(A) Persons to be joined if feasible.

**{¶41}** "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. * * *[.]

**{¶42}** "* * *

**{¶43}** "(C) Pleading reasons for nonjoinder.

**{¶44}** "A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (A)(1), (2), or (3) hereof who are not joined, and the reasons why they are not joined."

**{¶45}** Ms. Henry argues that, in its complaint, Capital One was required to join the three entities named, or explain the reason for nonjoinder, and did not.

**{¶46}** We respectfully disagree that any of the entities named by Ms. Henry could be considered a real party in interest in this case, or that joinder was required. As

13

Capital One points out, Capital One Services is merely its agent, and Ms. Henry was aware of this through correspondence. As Capital One further notes, other courts of this state have found that credit card statements referencing Capital One Services did not create a genuine issue of fact regarding whether Capital One was the real owner of the credit card account. *Capital One Bank (USA) N.A. v. Ryan*, 10th Dist. Franklin No. 14AP-102, 2014-Ohio-3932, ¶44.

{¶47} NCO Financial Systems, Inc. is identified in internal records of M & P as the creditor or client in this case. NCO is the agent used by Capital One to forward accounts to M & P for collection. None of this raises a genuine issue of material fact whether NCO was a party in interest, or that Capital One or M & P misled Ms. Henry as to the identity of the creditor.

{¶48} Finally, Ms. Henry's contention that the real party in interest might have been the securitization trust – i.e., the Compass Trust – into which the receivables for her account were placed in December 2002, is also belied by the evidence. Amy Amsler was deposed as a corporate representative of Capital One, and her affidavit entered into evidence. Her deposition and affidavit establish that Ms. Henry's receivables were designated for transfer to the Compass Trust in December 2002. The receivables were initially transferred to Capital One Compass Funding, LLC, a wholly owned subsidiary of Capital One, which then transferred them to the Compass Trust. When the Compass Trust dissolved in July 2006, all receivables in it were transferred back to Capital One Compass Funding. That entity then sold all receivables pertaining to the Compass Trust back to Capital One – before Capital One filed its initial action in 2007.

14

{¶49} At oral argument, counsel for Ms. Henry asserted Capital One had not responded to certain vital requests for production, particularly in relation to the securitization process. We have reviewed all of the discovery in this matter. The scope and detail of the discovery requests by Ms. Henry are fairly remarkable. In her deposition, Ms. Amsler testified that certain of the documents requested by Ms. Henry simply do not exist, and never have. She testified the matters at issue are largely done automatically, through computer programs under certain written agreements. Attached to her affidavit is the "Amended and Restated Transfer and Servicing Agreement," governing relations between Capital One, Capital One Compass Funding, and the Compass Trust. Also attached are the documents terminating the Compass Trust; its certificate of cancellation; the reassignment of receivables from the Compass Trust to Capital One Compass Trust Funding; and the sales agreement transferring the Compass One receivables from Capital One Compass Trust Funding. Capital One also introduced the affidavits of Benjamin Keefer and Michael Jackson, members of the Capital One Services, LLC Financial Data Management Team, who actually recovered certain of the information regarding the securitization of Ms. Henry's receivables from their computer system, and who explain the systems and procedures used.

{¶50} We respectfully conclude the evidence does not indicate Capital One withheld any pertinent documentation from Ms. Henry. We also point out, again, that Ms. Henry never moved to compel production of any alleged securitization documents.

{¶51} The fifth assignment of error lacks merit.

15

{¶52} For her sixth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that the plaintiff-appellee had standing to bring the collection action against Ms. Henry."

{¶53} Under this assignment of error, Ms. Henry emphasizes her account had been closed, and postulates this meant Capital One could not collect on it. She cites no authority for this theory, and we decline to consider it. App.R. 12(A)(2) and 16(A)(7).

{¶54} Ms. Henry also argues the securitization of the receivables from her account from 2002 until 2006 meant that Capital One had no right to collect on the account. This is not the law.

{¶55} "[N]umerous courts have held that simply because a debt is securitized, that does not mean that the original beneficiary or owner of the credit account * * * can no longer enforce its right to collect upon that debt. *See, e.g., Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ('The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts.'); *Tostado v. Citibank (S. Dakota), N.A.*, CIV.A. SA-09-CV549XR, 2010 U.S. Dist. LEXIS 228, * * * (W.D. Tex. Jan. 4, 2010) (recognizing that the 'real party in interest, Citibank would hold the right to enforce its interests on those accounts and loans' where Citibank continued to own the revolving credit account, even though Citibank sold its interest in the receivables through securitization)." (Parallel citation omitted.) *Sepehry-Fard v. Dept. Stores Natl. Bank*, N.D. Cal. No. 13-cv-03131-WHO, 2013 U.S. Dist. LEXIS 175320, *13-14 (Dec. 13, 2013).

{¶56} The sixth assignment of error lacks merit.

**{¶57}** For her seventh assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that the plaintiff-appellee was not subject to the FDCPA as a debt collector."

**{¶58}** For purposes of the FDCPA, a debt collector is defined as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).

**{¶59}** As a matter of law, since Capital One was the originator of the debt in question, it cannot be held liable under the FDCPA. *Capital One Bank (USA), N.A. v. Rhoades*, 8th Dist. Cuyahoga No. 93968, 2010-Ohio-5127, *7-8.

**{¶60}** The seventh assignment of error lacks merit.

**{¶61}** For her eighth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding insufficiency of facts to support FDCPA and CSPA violations by appellees." Ms. Henry correctly notes that collection actions which are time barred or misidentify the creditor may trigger liability under the FDCPA, and that the OCSPA is largely construed in harmony with the federal statute. However, as we have already determined that the creditor in this case was not misidentified, and that the collection action was not time barred, this assignment of error must fail as well.

**{¶62}** The eighth assignment of error lacks merit.

**{¶63}** For her ninth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that facts in evidence cannot support the fraud elements of justifiable reliance and injury." Ms. Henry notes that in her affidavit, she

17

testified she experienced emotional distress, and was required to locate counsel and pay a retainer to defend the credit card action.

**{¶64}** "'The elements which constitute the basis for a claim of fraudulent misrepresentation are: "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance."' *Kimball v. Duy*,[11th Dist. Lake No. 2002-L-046] 2002-Ohio-7279, at ¶23, quoting *Cardi v. Gump* (1997), 121 Ohio App.3d 16, 22, * * *." (Parallel citation omitted.) *Goddard v. Stabile*, 185 Ohio App.3d 485, 2009-Ohio-6375, ¶30 (11th Dist.)

**{¶65}** In *Glazer v. Chase Home Fin. L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, a debt collection case premised originally on foreclosure, appellant alleged fraud, but contested the foreclosing entity's standing and the validity of the debt. *Id.* at ¶81-85. The Eighth District stated: "we fail to see how [appellant] justifiably relied on alleged misrepresentations when he vigorously contested those representations in the foreclosure case." *Id.* at ¶85. A similar analysis applies here. Ms. Henry cannot show justifiable reliance on any alleged misrepresentation by Capital One or M & P: she has fought them vigorously.

**{¶66}** The ninth assignment of error lacks merit.

{¶67} For her tenth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that facts in evidence cannot support the abuse of process element of injury."

{¶68} "To succeed on an abuse of process claim, a plaintiff must establish: (1) a legal proceeding has been set in motion in proper form with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, * * * (1994). 'Abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.' *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, * * * (1996)." (Parallel citations omitted.) *Hrivnak v. NCO Portfolio Mgt.*, 994 F.Supp.2d 889, 902 (N.D.Ohio 2014).

{¶69} Ms. Henry claims the perversion of process herein was filing of the action on July 6, 2009, in order to coerce quick payment, as evidenced by a letter sent to her dated July 18, 2009. Her claimed damage is being required to hire counsel to defend the action.

{¶70} This court has the power to affirm a grant of summary judgment on a different basis than that used by the trial court. *See, e.g.*, *Bucholtz v. Childers*, 6th Dist. Ottawa No. OT-06-016, 2007-Ohio-870, ¶1. The court in *Hrivnak*, *supra*, held:

{¶71} "Further, the complaint lacks any allegations that Defendants sought to achieve something that the court was powerless to order. The only alleged 'ulterior purpose' could be that Defendants sought to collect money; however, the court had the power to assess an award. *Havens-Tobias v. Eagle*, 2003-Ohio-1561 ¶24, * * * (2d Dist.

19

2003). Plaintiff's abuse of process claim is without basis." (Parallel citations omitted.) *Id.* at 902.

{¶72} Similarly, in this case, the ultimate motive of Capital One was to get money, which the trial court had the power to grant (and did grant.)

{¶73} The tenth assignment of error lacks merit.

{¶74} For her eleventh assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that facts in evidence cannot support the claim of defamation." Ms. Henry notes the filing of this action negatively impacts her credit.

{¶75} In *Havens-Tobias*, *supra*, appellants Christi Havens-Tobias and her husband, David Tobias, brought assorted causes of action against Thomas Eagle and Schwan's Sales Enterprises, Inc. *Id.* at ¶1, 12. The trial court granted defendants summary judgment, and the Tobiases appealed. *Id.* at ¶1. One of the causes of action had been defamation. The Second District held, at ¶30-31:

{¶76} "Defamation is defined as 'a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business.' *Sweitzer v. Outlet Communications, Inc.* (1999), 133 Ohio App. 3d 102, 108, * * *. In order to state a cause of action for defamation, the following elements must be established: '(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement.' *Hale v. City of Dayton*, Montgomery App. No. 18800, 2002-Ohio-542, quoting *Stanley v. City of Miamisburg* (Jan. 28, 2000), Montgomery App. No. 17912,

20

2000 Ohio App. LEXIS 205. A written statement falsely charging a party with commission of a crime is defamation per se, and harm to the individual is presumed. See *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, * * *.

{¶77} "The Tobiases argue that the following actions by Eagle constituted defamation: demanding payment to M&M in a letter to the Tobiases' attorney, filing a lawsuit to collect the debt and damages from the Tobiases, and filing a memorandum in opposition to the Tobiases' motion to dismiss the lawsuit against them. Eagle argues that these statements were privileged against a defamation action because they were made to the Tobiases' attorney and in the context of a judicial proceeding. We agree with Eagle. 'A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears.' *Hecht v. Levin*, 66 Ohio St.3d 458, 460, * * *." (Parallel citations omitted.)

{¶78} All of Capital One's allegedly defamatory statements or publications concerning Ms. Henry have been in the context of judicial proceedings. They are privileged.

{¶79} The eleventh assignment of error lacks merit.

{¶80} For her twelfth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that facts in evidence cannot support the claim of civil conspiracy."

{¶81} "The tort of civil conspiracy is '"a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone,

21

resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St. 3d 415, 419, * * *, quoting *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St. 3d 121, 126, * * *; *Gosden v. Louis* (1996), 116 Ohio App. 3d 195, 219, * * *; *Minarik v. Nagy* (1963), 8 Ohio App. 2d 194, 196, * * *. See 16 American Jurisprudence 2d (1998), Conspiracy, Sections 50-73. * * *[.]"

{¶82} "An underlying unlawful act is required before a civil conspiracy claim can succeed. *Gosden*, 116 Ohio App. 3d at 219, * * *; *Minarik*, 8 Ohio App. 2d at 195, * * *." (Parallel citations omitted.) *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998).

{¶83} In this case, Ms. Henry appears to argue that the filing of the allegedly time-barred action, and her FDCPA and OCSPA claims, constitute the "underlying unlawful act(s)" necessary to support the civil conspiracy claim. As neither we nor the trial court have found merit in those claims, it follows that the claim for civil conspiracy also fails.

{¶84} The twelfth assignment of error lacks merit.

{¶85} For her thirteenth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in finding that 'Capital One is Morgan & Pottinger's client, and Morgan & Pottinger has not engaged nor has it assisted in any unauthorized practice of law.'"

{¶86} In support of this assignment of error, Ms. Henry notes that M & P's own internal documents list "NCO Financial Systems, Inc." as its client. NCO is the collection agency used by Capital One to forward the overdue account to M & P for legal action.

**{¶87}** "In Ohio, a collection agency engages in the unauthorized practice of law when it prosecutes claims in a court of justice on behalf of creditors. *Med Controls, Inc. v. Hopkins*, 61 Ohio App. 3d 497, * * * (Ohio Ct. App. 8th Dist. 1989). In explaining this concept, the *Hopkins* court stated:

**{¶88}** "'The collection agency practiced law by interposing itself as an intermediary between a licensed attorney and a client. In effect, the collection agency becomes the client of the attorney when it is not. This creates an absence of the attorney-client relationship that diverts the interest of the attorney from the entity whose real interests are at stake in the proceedings, thereby giving rise to a possible conflict of interest.'

**{¶89}** "*Id.* A collection agency may file suit in its own name only when it has become the legal and equitable owner of the debt through an assignment that satisfies all of the requirements set forth in Ohio Revised Code § 1319.12. *See* OHIO REV. CODE § 1319.12(C). The collection agency need not adhere to the assignment requirements in § 1319.12(C) if it restricts its collections methods to exclude legal action. *See* OHIO REV. CODE § 1319.12(B).

**{¶90}** "When a collection agency engages in the unauthorized practice of law, it constitutes an 'action that cannot legally be taken' within the meaning of the FDCPA. *See, e.g., Poirier v. Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997) (holding that collections agency violated § 1692e(5) when it engaged in the unauthorized practice of law by instituting a lawsuit against a debtor since the debt had not been properly assigned); *Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001, 1004-06 (D. Ariz. 1998); *Martinez v. Alburquerque Collection Services, Inc.*, 867 F. Supp. 1495,

23

1503 (D. N.M. 1994)." (Parallel citation omitted.) *Foster v. D.B.S. Collection Agency*, 463 F.Supp 2d 783, 804 (S.D.Ohio 2006).

{¶91} We respectfully find this law inapplicable to this case. M & P is a law firm. M & P explained why its records systems shows the forwarding agency as the client or customer. Most significantly, NCO did not file this action itself, nor did M & P file this action on behalf of NCO. It was filed on behalf of Capital One by M & P.

{¶92} The thirteenth assignment of error lacks merit.

{¶93} For her fourteenth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in admitting COB Summary Judgment Exhibits A and F, and evidence submitted with COB's Reply brief, without permitting Ms. Henry a fair opportunity to obtain and present evidence in opposition to the summary judgment motions."

{¶94} Ms. Henry objects that two exhibits submitted by Capital One in support of its summary judgment motion were insufficiently authenticated. She further objects that Capital One submitted further affidavits in conjunction with its reply brief, and that she was not given the opportunity to cross-examine the affiants.

{¶95} "The decision to admit or exclude evidence, including affidavit testimony, is subject to review under an abuse of discretion standard, and absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, we will not disturb the trial court's ruling. *Boggs v. The Scotts Co.*, 10th Dist. No. 04AP-425, 2005-Ohio-1264, ¶35, citing *Sidenstricker v. Miller Pavement Maintenance, Inc.*, 158 Ohio App.3d 356, 2004-Ohio-4653, ¶23, * * * (10th Dist.), and *Krischbaum v. Dillon*, 58

24

Ohio St.3d 58, 65, * * * (1991*).*" (Parallel citations omitted.) *Cashlink, LLC v. Mosin, Inc.*, 10th Dist. Franklin No. 12AP-395, 2012-Ohio-5906, ¶9.

{¶96} The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶97} One of the affidavits submitted by Capital One in conjunction with its reply brief was a supplemental affidavit from Richard A. Napolitano, intended to correct deficiencies objected to by Ms. Henry regarding his affidavit in support of Capital One's summary judgment motion, and the exhibits attached thereto. The balance of the other new evidence submitted by Capital One related to the effect of the securitization of the receivables from Ms. Henry's account – an issue she first raised in her brief in opposition to summary judgment.

{¶98} Affidavits which do not raise new issues, or which simply respond to issues raised by the opposing party, may be attached to a reply brief and considered by a trial court. *Cashlink, LLC*, *supra*, at ¶11. Further, Capital One filed its reply brief July 19, 2012. By its order filed July 24, 2012, the trial court gave all the parties an additional 21 days to submit supplements to their briefs and additional affidavits. Ms. Henry had already deposed Mr. Napolitano. She had time to, at least, gather further affidavits of her own. Under the circumstance, we do not see how the trial court abused

its discretion in not further extending the already generous discovery schedule in this case.

{¶99} The fourteenth assignment of error lacks merit.

{¶100} For her fifteenth assignment of error, Ms. Henry states: "The trial court committed prejudicial error in denying Ms. Henry the opportunity to obtain discovery pertinent to class certification and as a result file a motion for class certification."

{¶101} The trial court granted a protective order, staying discovery on Ms. Henry's request for class action certification, pending resolution of the summary judgment motions. Citing Civ.R. 23(C)(1), Ms. Henry contends the trial court thereby abused its discretion, since the rule mandates that trial courts determine whether a class action may be maintained "[a]s soon as practicable after the commencement of an action brought as a class action * * *[.]"

{¶102} "A trial court's decision to grant a stay of discovery pending the resolution of a dispositive motion is reviewed for an abuse of discretion." *B.J. Alan Co. v. Andrews*, 7th Dist. Mahoning No. 13 MA 55, 2014-Ohio-2938, ¶20. Further, "questions concerning matters of discovery relating to the presence or absence of class action requirements of Civ.R. 23(A) and (B) rest in the sound discretion of the trial court." *Burrell v. Sol Bergman Estate Jewelers, Inc.*, 77 Ohio App.3d 766, 770 (8th Dist.1991). In this case, the trial court found the discovery sought was "voluminous," and would have constituted an undue burden on Capital One and M & P prior to resolution of the dispositive motion portion of the case. The decision of the trial court to stay any class action discovery was reasonable, and no abuse of discretion.

{¶103} The fifteenth assignment of error lacks merit.

26

{¶104} The judgment of the Portage County Court of Common Pleas is affirmed. All pending motions are hereby overruled.

THOMAS R. WRIGHT, J. concurs in judgment only,

TIMOTHY P. CANNON, P.J., concurs in judgment only with a Concurring Opinion.

_____

TIMOTHY P. CANNON, P.J., concurring in judgment only.

{¶105} I respectfully concur in judgment only.

{¶106} Among other issues, I would specifically hold that R.C. 1109.69 does not apply to the enforcement of written and signed credit card agreements. There is no subsection in either the one- or six-year retention limit periods that specifically refers to credit card agreements and accounts.

{¶107} Also, with regard to Ms. Henry's argument that res judicata should have barred the re-filed complaint, the majority notes that the municipal court had not yet adopted the magistrate's recommendation of dismissal at the time Capital One filed its notice and cites to a case that has no apparent application. However, the timing of filing the notice of dismissal actually supports Ms. Henry's claim because it appears it was filed *after* the trial to the magistrate commenced. Pursuant to Civ.R. 41(A)(1)(a), a notice of dismissal may only be filed "before commencement of trial." I would not apply res judicata to this case simply because it is an affirmative defense and was never raised in the trial court; therefore, it was waived.